Scott A. **FEATHER**, Appellant (Plaintiff),

v.

**STATE FARM FIRE AND CASUALTY**, a foreign corporation; and Max Jones, d/b/a Max Jones Agency, Appellees (Defendants).

No. 93–133.

Supreme Court of Wyoming.

April 26, 1994.

Patrick Dixon, Casper, for appellant.

John I. Henley and Wendy S. Eberle of Vlastos, Brooks & Henley, P.C., Casper, for appellees.

Before MACY, C.J., THOMAS, CARDINE and TAYLOR, JJ., and ROONEY, J. (Retired).

TAYLOR, Justice.

A putative insured contends that the district court erred in granting summary judgment in this dispute concerning the existence of insurance coverage. The putative insured claims he orally arranged for insurance coverage by informing an agent of a vehicle acquisition. The insurer never issued a policy for the vehicle and the putative insured never paid any premiums for insuring that vehicle. One year later, however, the putative insured sought indemnification after being involved in an accident. The insurer denied coverage. The district court granted summary judgment in favor of the insurer and the agent.

We affirm.

## I. ISSUES

Appellant, the putative insured, Scott A. Feather, identifies these issues:

1. Was the trial court in error in concluding that policy # [S]08–6996–EO8–50 had been effectively canceled?

2. Was there a genuine issue of material fact as to whether the Max Jones Agency bound coverage on the 1956 GMC?

3. What is the extent of the insured's duty to read [the insurance contract]?

Appellees, the insurer, State Farm Fire and Casualty, and the agent, Max Jones Agency, rephrase:

1. The trial court correctly determined that there was no genuine issue of material fact regarding the cancellation of policy number SO8–6996–EO8–50.

2. The trial court correctly determined that there was no genuine issue of material fact as to whether the Max Jones Agency bound coverage on the 1956 GMC pickup.

3. The trial court correctly determined that an insured has a duty to read and, if necessary, reject his policy within a reasonable time, and that Appellant's failure to inspect his policy properly entitled Appellees to summary judgment.

## II. FACTS

In May of 1990, Scott A. Feather (Feather) and his wife insured two vehicles with State Farm Fire and Casualty (State Farm). Feather obtained the insurance through State Farm's agent, the Max Jones Agency (Jones). State Farm issued policy number SO8 6996–EO8–50 to insure a 1965 Chevrolet pickup and policy number SO8 6997–EO8–50 to insure a 1977 Ford Pinto sedan. The coverage provided for each vehicle was detailed on a separate "Declarations Page" which was to be attached by the insured to a "policy booklet" containing the terms of the contract of insurance. Each policy was effective for a six month period. Renewal notices which directed the payment of additional premiums to maintain coverage were mailed to Feather prior to the expiration of each six month period. Each renewal notice specifically identified the policy number, the vehicle insured by that policy, the type of coverage provided, and the amount of premium to be paid. Feather promptly paid these premiums.

In March of 1991, Feather telephoned Jones to request specific changes in insurance coverage. Feather had replaced the 1977 Ford Pinto with a 1985 Chevrolet Monte Carlo sedan. On March 19, 1991, State Farm reissued policy number SO8 6997–EO8–50B to insure the 1985 Chevrolet Monte Carlo. During the same conversation, Feather discussed canceling or suspending coverage for the 1965 Chevrolet pickup while he had extensive repair work completed. The agent recommended suspending coverage during this period so that a multiple car discount would remain in effect. After Feather's wife signed an authorization form, State Farm suspended policy number SO8 6996–EO8–50 which insured the 1965 Chevrolet pickup. The suspension of coverage became effective on March 20, 1991. The authorization form specifically notes: "Vehicle is in the body shop. Will reinstate coverage as soon as repairs are made."

Feather contends that in late April of 1991, he again telephoned Jones to request a change in insurance coverage. Feather had purchased a 1956 GMC pickup. Feather claims that he spoke to an unidentified employee of Jones and requested coverage for the 1956 GMC pickup. Jones has no record of the conversation and State Farm never issued a policy of insurance to Feather for a 1956 GMC pickup.

Six months after insurance coverage for the 1965 Chevrolet pickup was suspended, State Farm mailed a notice to Feather that policy number SO8 6996–EO8–50 was being canceled. The notice stated that since Feather had not requested reinstatement of the policy, it was being canceled and a premium credit of $28.72 would be returned. Feather denies receiving the letter which was dated September 24, 1991. The check for the premium credit, which was apparently mailed separately, was cashed and deposited in Feather's account on April 9, 1992.

On April 1, 1992, Feather was involved in an accident while driving the 1956 GMC pickup. Feather filed a claim for indemnification with State Farm. State Farm, however, denied coverage because no policy had been issued for that vehicle.

On September 4, 1992, Feather filed a complaint seeking, in part, to recover damages from State Farm and Jones. Feather alleged that State Farm had breached the contract of insurance by refusing to provide coverage for the April 1, 1992 accident. Feather also contended that State Farm had breached the implied covenant of good faith and fair dealing by failing to properly investigate its coverage responsibilities for the April 1, 1992 accident. Feather alleged that Jones had breached its duty of due care and diligence by negligently handling the application for insurance for the 1956 GMC pickup. Finally, Feather sought a declaratory judgment to determine if a contract was created to provide insurance coverage for the 1956 GMC pickup.

The district court granted summary judgment in favor of State Farm and Jones. The district court determined that Feather had failed to exercise diligence in reviewing his insurance coverage.

### III. DISCUSSION

■ Summary judgment is proper if we conclude there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. W.R.C.P. 56(c). A fact is material if it would establish one of the essential elements of a cause of action or defense asserted by either party. *Moore v. Continental Ins. Co.,* 813 P.2d 1296, 1299 (Wyo.1991). Summary judgment is not appropriate to resolve factual conflicts; therefore, the reviewing court does not weigh evidence as a fact finder. *Wilder v. Cody Country Chamber of Commerce,* 868 P.2d 211, 216 (Wyo.1994); *Cordova v. Gosar,* 719 P.2d 625, 637–38 n. 6 (Wyo.1986). We review the record in the light most favorable to Feather as the party who opposed the motion, affording him all beneficial inferences which may reasonably be drawn from the affidavits, depositions, and exhibits presented as facts. *Wilder,* 868 P.2d at 216; *Keehn v. Town of Torrington,* 834 P.2d 112, 114 (Wyo. 1992). Interpretation of an unambiguous contract presents an issue of law which may be appropriately determined by summary judgment. *Doctors' Co. v. Insurance Corp. of America,* 864 P.2d 1018, 1023 (Wyo.1993).

■ Feather asserts that coverage for the 1956 GMC pickup should be found under policy number SO8 6996–E08–50 which insured the 1965 Chevrolet pickup. This policy provided coverage for the use of other cars, including a "newly acquired car * * *." The term "newly acquired car" was specifically defined:

*Newly Acquired Car*—means a *car* newly owned by *you* or *your spouse* if it:

1. replaces *your car;* or

2. is an added *car* and:

a. if it is a *private passenger car,* we insure all other *private passenger cars,* or

b. if it is other than a *private passenger car,* we insure all *cars*

owned by *you* and *your spouse* on the date of its delivery to *you* or *your spouse;*

but only if *you* or *your spouse:*

1. tell us about it within 30 days after its delivery to *you* or *your spouse;* and

2. if *you* or *your spouse* has more than one of our *car* policies, tell us which one is to apply; and

3. *pay* us any added amount due.

(Emphasis in original.)

The unambiguous language of this portion of the policy directs a conclusion that State Farm had no coverage obligation for the 1956 GMC pickup at the time of the accident. Even if we assume Feather notified Jones about the delivery of the 1956 GMC pickup within thirty days, and notified Jones which policy of insurance was to apply to the 1956 GMC pickup, there is no evidence that Feather paid any premium for coverage of the 1956 GMC pickup during the nearly one year that he owned the vehicle prior to the accident. The failure to comply with all of the conditions set forth in the "newly acquired car" clause means that there can be no coverage for the 1956 GMC pickup under policy number SO8 6996–E08–50. *Wall v. Ranger Ins. Co.,* 188 Ga.App. 754, 374 S.E.2d 333, 335 (1988); *Renda v. Brown,* 563 So.2d 328, 331, 333 (La.App.1990). *See also* James L. Isham, Annotation, *Construction and Application Of "Automatic Insurance" or*

*"Newly Acquired Vehicle" Clause ("Replacement," and "Blanket," or "Fleet" Provisions) Contained in Automobile Liability Policy,* 39 A.L.R.4th 229 (1985).

Furthermore, Feather does not dispute that he agreed to suspend policy number SO8 6996–EO8–50. The suspension of coverage became effective on March 20, 1991 after Feather's wife signed the authorization form. At the time Feather acquired the 1956 GMC pickup in late April of 1991, no coverage was available under policy number SO8 6996–EO8–50. Additionally, policy number SO8 6996–EO8–50 had been canceled when the accident occurred for which Feather seeks indemnification in April of 1992.

▮ Feather challenges that he was misled into believing that the 1956 GMC pickup was covered by the increased premiums shown on his renewal and premium notices. This argument is without merit. Each renewal notice identifies the vehicle insured by that policy. Each premium notice identifies the vehicle for which a premium is due. None of these notices made reference to coverage for a 1956 GMC pickup. Feather failed to fulfill his duty to read. *Darlow v. Farmers Ins. Exchange,* 822 P.2d 820, 828–29 (Wyo.1991).

▮ Finally, Feather argues that the notice to Jones of the acquisition of the 1956 GMC pickup formed an oral contract in anticipation of a premium to procure insurance coverage. Feather relies upon this court's decision in *Hursh Agency, Inc. v. Wigwam Homes, Inc.,* 664 P.2d 27 (Wyo.1983) to support his position. In *Hursh Agency, Inc.,* the putative insured telephoned a principal in the agency on a Saturday to obtain coverage. *Id.* at 30. The putative insured suffered a loss on the following Tuesday. *Id.* However, the agency had failed to get an acknowledgement from an insurer that coverage existed before the loss occurred. *Id.* at 34. This court affirmed an award of damages for breach of contract. *Id. See also Hoiness–LaBar Ins. v. Julien Const. Co.,* 743 P.2d 1262, 1273 (Wyo.1987).

*Hursh Agency, Inc.* and *Hoiness–LaBar Ins.* represent one point on a continuum which reflects the duties of the insured and the insurer during the tenure of their relationship. *Moore,* 813 P.2d at 1296, reflects another point in this continuum. *Moore* addressed the duty of a putative insured to mitigate his damages by exercising reasonable diligence and care. *Id.* at 1300. The putative insured was informed by the insurer that a homeowner's policy was being canceled. *Id.* at 1298–99. The putative insured asked an agent to investigate other coverage options but failed to obtain coverage. *Id.* at 1299. Four months later, the home was damaged in a fire. *Id.* The putative insured sought damages for the wrongful cancellation of coverage. *Id.* at 1296. This court, however, held that the putative insured could not recover because he had failed to act to avoid the loss. *Id.* at 1301.

In *Georgia Cas. & Sur. Co. v. Sanders,* 168 Ga.App. 402, 309 S.E.2d 400 (1983), the court addressed the duty of an insured to examine the coverage obtained from an insurer. The insured had coverage for three vehicles with a single insurer. One of the covered vehicles was a 1974 Ford F600 truck. However, the insured sold the 1974 Ford F600 truck and replaced it with a 1975 Ford F700 truck. *Id.* The insured contended the insurer had been informed of the change but the change was not reflected on the insured's policy. *Id.* at 400–01. More than a year after the insured purchased the 1975 Ford F700 truck, the insured was involved in an accident and sought indemnification from the insurer. *Id.* at 400. The insurer denied coverage. *Id.* The Court of Appeals of Georgia ruled the insured had a duty to examine a policy of insurance and reject or correct the policy, if necessary, within a reasonable time. *Id.* at 401. The court held that because of the insured's failure to inspect the policy and notice the omission, the insurer had no coverage obligation. *Id.*

Feather's conduct reflects the same lack of reasonable diligence which prevented recovery in *Moore* and *Sanders.* Feather never paid a premium to insure a 1956 GMC pickup. Feather never had a policy of insurance from State Farm to insure a 1956 GMC pickup. For nearly one year, Feather failed to inquire about coverage for the 1956 GMC pickup or provide notice to Jones or State

Farm of the omission. We hold Feather failed to exercise reasonable diligence in determining the extent of the insurance coverage he had obtained from Jones and State Farm. *Moore,* 813 P.2d at 1301; *Sanders,* 309 S.E.2d at 401.

## IV. CONCLUSION

Feather's lack of reasonable diligence precludes recovery under any of the theories he advanced. State Farm and Jones are entitled to summary judgment as a matter of law.

The judgment of the district court is affirmed.