Whitney MARTIN and James Martin,
Appellants (Defendants),

v.

FARMERS INSURANCE EXCHANGE,
a foreign insurance exchange,
Appellee (Plaintiff).

No. 93–241.

Supreme Court of Wyoming.

May 4, 1995.

Dallas J. Laird, Casper, for appellants.

George E. Powers, Jr. and Kay Lynn Bestol of Sundahl, Powers, Kapp & Martin, Cheyenne, for appellee.

Bruce B. Waters and John E. Stanfield of Smith, Stanfield & Scott, Laramie, for amicus curiae Debora Pribble.

Julie Nye Tiedeken, Cheyenne, for amicus curiae State Farm Mut. Auto. Ins. Co.

Before GOLDEN, C.J., and THOMAS, MACY, TAYLOR, and LEHMAN, JJ.

TAYLOR, Justice.

Whitney Martin was seriously injured when a car she and her husband owned was in an accident caused by the negligent driving of Annette Failes. Mr. and Mrs. Martin and Annette Failes carried virtually identical liability insurance through Farmers Insurance Exchange. Paying Whitney Martin the full $100,000.00 on Annette Failes' policy, Farmers Insurance Exchange relied upon a "household exemption" to limit recovery to $25,000.00 under Mr. and Mrs. Martin's policy. Having stipulated to all operative facts, Farmers Insurance Exchange sought declaratory approval for that limited payout. From the success of Farmers Insurance Exchange's endeavor, Mr. and Mrs. Martin prosecute this appeal. We affirm.

## I. ISSUES

Appellants, James and Whitney Martin (the Martins), present the following issue:

Is there an ambiguity in the appellants' insurance policy which would require the court to enter summary judgment favoring appellants?

Appellee, Farmers Insurance Exchange (Farmers), states the issue as:

Did the District Court correctly rule that an insurance policy must be read as a whole and that certain language on the declarations sheet did not conflict with the exclusionary provision of the policy at issue?

## II. FACTS

The Martins were the named insureds on a policy with Farmers providing coverage for the Martins' 1988 Subaru. Whitney Martin's mother, Annette Failes (Failes), was the named insured on a separate policy with Farmers providing coverage for her 1986 Comanche. Each insurance contract consisted of a 1st Edition Wyoming "Your E–Z–Reader Car Policy" and a "Declarations" page.

Each declarations page identifies, *inter alia*, the insureds, the covered vehicle, and the coverages, including $100,000.00 per person for bodily injury. Each declarations page includes the following:

This Declarations page, when signed by us, becomes part of the policy numbered on the reverse side. It supersedes or controls anything to the contrary. It is subject to all the other terms of the policy.

"Us" is defined on page one of the policy as meaning Farmers. The validity of each declarations page and each policy, as constituting a contract for insurance, at the time of the accident is not in dispute.

Each policy lists, at page two, exclusions: "This coverage does not apply to: * * * 11. The amount of liability for *bodily injury* to an *insured person* in excess of the minimum limits of the Wyoming Financial Responsibility Law." (Emphasis in original). "Insured person" is defined as including "[y]ou or any *family member*." (Emphasis in original). "You" means the "named insured" and "*[f]amily member* means a person related to you by blood, marriage or adoption who is a resident of your household." (Emphasis in original).

Each declarations page states that "[t]he policy is issued in reliance upon the statements in the Declarations." Each policy repeatedly refers to the declarations page as an integral part of the contract, stating, *inter alia:*

AGREEMENT

We [Farmers] agree with you [insureds], in return for your premium payment, to insure you subject to all the terms of this policy. We will insure you for the coverages and the limits of liability shown in the Declarations of this policy.

At the top of each policy's table of contents, appearing just prior to page one in each case, is the following statement: "Declarations—Your Personal Coverage Page is attached inside the front cover."

On August 22, 1992, with Failes at the wheel, the Martins' Subaru was in a single car "roll-over" accident on U.S. Interstate 15, just north of Scipio, Utah, resulting in severe injuries to passenger Whitney Martin. Farmers paid $100,000.00 to the Martins, fully discharging Failes' insured liability, but relied upon the policy exclusion regarding bodily injury to an insured to limit payment on the Martins' policy to $25,000.00, the minimum required by Wyoming's financial responsibility law, Wyo.Stat. § 31–9–405(b)(ii) (1989). For purposes of the action, Farmers agreed that the Martins' damages exceeded $200,000.00.

Stipulating to all of the foregoing with the Martins, Farmers obtained summary judgment that the $25,000.00 payment fully discharged Farmers' liability on the Martins' policy.

## III. STANDARD OF REVIEW

We will affirm a summary judgment provided there is no genuine issue of material fact and the law clearly entitles the moving party to prevail. *Lincoln v. Wackenhut Corp.*, 867 P.2d 701, 702 (Wyo.1994). An insurance policy constitutes a contract between insurer and insureds. *Worthington v. State*, 598 P.2d 796, 806–07 (Wyo.1979). When the parties have stipulated to all material facts, summary judgment is proper if such an insurance contract is found to be unambiguous. *Prudential Preferred Properties v. J and J Ventures, Inc.*, 859 P.2d 1267, 1271 (Wyo.1993).

Without deference to the district court's conclusions of law, our threshold inquiry plumbs the contract in question for ambiguity. *Hayes v. American Nat. Bank of Powell*, 784 P.2d 599, 604 (Wyo.1989); *International Surplus Lines Ins. Co. v. University of Wyoming Research Corp.*, 850 F.Supp. 1509, 1518 (D.Wyo.1994). Ambiguity exists where a contract "is obscure in its meaning because of indefiniteness of expression or because it contains a double meaning." *Ferguson v. Reed*, 822 P.2d 1287, 1289 (Wyo. 1991). Whether there is ambiguity within the four corners of the contract is a question of law. *Burk v. Burzynski*, 672 P.2d 419, 423 (Wyo.1983).

Only when a contract is ambiguous do we acquire license to *construe* that document by resort to extrinsic evidence. *Amoco Production Co. v. Stauffer Chemical Co. of Wyoming*, 612 P.2d 463, 465 (Wyo.1980). Such construction is not, in the first instance, an appropriate appellate task because doubt about the meaning of a contract creates a genuine issue of material fact and thereby renders summary judgment inappropriate. *Jackson Hole Racquet Club Resort v. Teton Pines Ltd. Partnership*, 839 P.2d 951, 958 (Wyo.1992).

Finding a contract to be unambiguous necessarily impresses us with a firm understanding of the parties' agreement. Any unavailing search for ambiguity must, necessarily, yield a singular *interpretation* of that contract, as a matter of law. *Feather v. State Farm Fire and Cas.*, 872 P.2d 1177, 1180 (Wyo.1994). Interpretation connotes consideration of the contract as a whole, reading each provision in light of all the others to find the plain and ordinary meaning of the words, as they are juxtaposed. *Lund v. Lund*, 849 P.2d 731, 739 (Wyo.1993).

## IV. DISCUSSION

The Martins urge us to rule that the $100,000.00 bodily injury liability limit on their declarations page voids the household exclusion contained in the body of the policy by operation of the statement that "[i]t [the declarations page] supersedes or controls anything to the contrary." Such an interpretation is not without its appeal, particularly in light of Whitney Martin's grievous injuries. However, the issue here is not certifi-

cation of the Martins' need, which is manifest, but interpretation of the pre-existing agreement made between the Martins and Farmers.

■ The difficulty with the Martins' position, as correctly diagnosed by the district court, is that it impermissibly tortures one sentence on the declarations page in an effort to create a semblance of ambiguity where none actually exists. *Commercial Union Ins. Co. v. Stamper,* 732 P.2d 534, 539 (Wyo. 1987) (*quoting McKay v. Equitable Life Assurance Society of the United States,* 421 P.2d 166, 168 (Wyo.1966)). This confounds our general reluctance to read parts of an insurance contract, such as the declarations page, in isolation as opposed to interpreting the contract as a whole to effectuate the intent of the parties. *Carlson v. Water Unlimited, Inc.,* 822 P.2d 1278, 1281 (Wyo.1991) (*quoting Amoco Production Co.,* 612 P.2d at 465); *National Farmers Union Property and Cas. Co. v. Zuber,* 824 F.Supp. 1017, 1020 (D.Wyo.1993).

■ Hard by the assertion of the declarations page that it "supersedes and controls anything to the contrary" is the caveat that "[i]t [the declarations page] is subject to all the other terms of the policy." This is but one of the ubiquitous reminders that the contract between the Martins and Farmers encompasses *both* the declarations page and the policy.

Before the declarations page is competent to supersede and control anything to the contrary, it must be possessed of sufficient integrity, standing alone, to convey a clear and definite meaning. Moreover, the same must be true of "anything to the contrary," in order that it may be adjudged "contrary" *ab initio.* Put another way, the declarations page cannot supersede and control the policy when both are inchoate and without meaning unless read in concert with the other.

The Martins do not, because they cannot, argue that the declarations page conveys a certain and definite meaning without the necessary matrix of the contract contained in the policy. For example, the Martins' claim depends upon the facial expression of the declarations page that coverage for bodily injury is $100,000.00 for each person. Absent reference to the policy (or some extrinsic source), a case might be made that the named insured receives $100,000.00 every time he or she is injured in an accident. Such a *reductio ad absurdum* may not be avoided on the grounds that everybody knows better, because the parties have stipulated (with our concurrence) that we are about the task of interpreting a contract within the bounds of its four corners.

It is noteworthy that Failes' declarations page describes her 1986 Comanche as the insured vehicle. If, as the Martins argue, the declarations page may not be modified by reference to the policy, then the $100,000.00 payout on the Failes' policy would have been in error as Failes was not driving her Comanche when the accident occurred. Of course, any such notion is quickly dispelled by reference to the following passage on page one of each policy:

PART I—LIABILITY

\*     \*     \*     \*     \*     \*

*Your insured car* as used in this part shall also include any other \* \* \* *car* \* \* \* [when] the use is with permission of the owner \* \* \*.

Even the very centerpiece of the Martins' claim—"[t]his Declarations page, when signed by us, becomes part of the policy numbered on the reverse side"—is without force, effect, or basic meaning without reference to definitions contained within the body of the policy.

The amici curiae entice us to some sweeping declaration as to the efficacy *vel non* of the so-called "household exemption" contained in many contracts of insurance similar to that in the instant case. However, the Martins' coverage under their policy with Farmers met the statutory requirement as a minimum coverage, and neither stated statutory public policy nor persuasive precedent afford us sufficient license to disregard the clear terms of the contract for insurance between the Martins and Farmers. *Commercial Union Ins. Co.,* 732 P.2d at 537–38. The Martins do not argue that the "household exemption" in their policy is ambiguous or expressed in arcane terms, and have failed

to present any viable theory upon which it may be disregarded.

## V. CONCLUSION

We have not turned a blind eye to the unequal bargaining position of parties to most contracts of insurance. *State Farm Mut. Auto. Ins. Co. v. Shrader,* 882 P.2d 813, 827 (Wyo.1994). However, consumer expectations can hardly be reasonable, by definition, if they are cultivated in contravention of clear and unambiguous language contained within the contract of insurance. The Martins had an unambiguous contract with Farmers and cannot reasonably expect benefits in excess of the clear terms of that contract.

The district court's grant of summary judgment in favor of Farmers Insurance Exchange is affirmed.